but the next case on the calendar, which is United States versus Taylor 24-6464. Whenever you're ready. Thank you, Your Honor. Good morning and may it please the court Jessica Snyder on behalf of the appellant my Isha Taylor and I'd like to reserve three minutes of my time for rebuttal. Sure. Just keep track of your time. Please. Thank you, Your Honor. You bet in the face of a five count federal indictment. My Isha Taylor exercised her right to a jury trial and was acquitted of the majority of the counts against her. The district court sentencing decisions disregarded the jury's verdict and diminished Miss Taylor's jury trial rights recognizing that I have limited time and many issues today. I'd like to start by talking about the two sentencing errors that implicated Miss Taylor's constitutional jury trial rights and then I'll proceed to the prosecutorial misconduct or be otherwise directed as I can be helpful to this court. Okay. So starting with the acquitted conduct record here confirms that Miss Taylor's sentence was increased based on the acquitted counts not based on the hung count and that's for a couple of reasons here. Even if we buy that even if you persuade us of that could you go to the other problem which is the Mercado case and the date of the effective date of the change? Absolutely, Your Honor. So I think there's two questions there. The most important I believe is this court's path under Miller v. Gammy to making the determination that there's sufficient intervening authority that undercuts the reasoning and theory of the Mercado majority case to allow this court to not be bound by it and I want to touch on that first. Okay. So the circumstances of this case are incredibly unique. What we have here is the Mercado's majority opinion resting its reasoning on the fact that it thinks that the Supreme Court had decided the Sixth Amendment issue in Watts and that is what we know from intervening authority to be undermined at this point and what we have here which is unique is both written opinions by many Supreme Court justices specifically speaking to this issue and action by the Sentencing Commission and their reasoning and their action adopting Amendment 862. Let me stop you for a second. Is there not a concurrence or dissent? If concurrences and dissents worked, the law would be very different because I'd make a lot of them. Do we have an opinion of the Supreme Court that rejects the use of acquitted conduct? Your Honor, we don't have one that comes after Mercado. What we have and the Sentencing Commission wouldn't have done what it did. It wouldn't have needed to if the Supreme Court had ruled otherwise, right? That's right, Your Honor. That's right. Right. They haven't. They haven't. Several of them have lamented the state of using acquitted conduct, but I think that's why the Sentencing Commission took its action. I take Judge Hurwitz's point. The Commission said, well, we might change it, but we're not backing it up. We're not making it retroactive. Well, both. But two points, right? One is that they had to act because the Supreme Court hadn't, didn't have a majority. And then there's the other question, which is the retroactivity. The part that's undermined, Your Honor, by an actual Supreme Court case, but I will note that this predates the Mercado's opinion, is the fact that the Mercado majority thought they were bound by the Watts decision and that the Supreme Court had decided the Sixth Amendment issue and that it said it was permissible under the Sixth Amendment to sentence under acquitted conduct. What we know from Booker and from all of the writings of the Supreme Court since that time is that the Supreme Court decision has to be an intervening Supreme Court decision. That's correct, Your Honor. In other words, we may have got the law entirely wrong at the time, but we're still stuck with our prior decision unless there's something new that tells us. What we have here. Was that, excuse me, was that a yes? Do you agree with that? I do agree. I think that the Miller v. Gammie path requires intervening, intervening authority that undermines the reasoning or theory. It doesn't have to be holding that squarely. I'm not trying to sidetrack you. I just want to make sure you agree with the premise. Go right ahead, please. What I was going to say, Your Honor, is that while we don't, and I don't have a Ninth Circuit case that says that this is permissible. This is different from the other circumstances I've seen Miller v. Gammie approved. But what we have here is intervening action by the Sentencing Commission and state written statements by five Supreme Court justices. To the extent this court doesn't think that's sufficiently binding on this court or sufficiently evidence that the reasoning in the Mercado majority is undermined and wrong, then I would urge this court to refer this issue to the en banc panel for review. Or you can file a petition. Can I just back up a minute? Then you're asking us to look at this change in the sentencing from the Sentencing Commission as intervening authority. Yeah, and we have to meet the Miller v. Gammie standard under your theory, which was, you know, it has to be irreconcilable. And at a minimum, it's not retroactive, right? Reasoning is what's irreconcilable, Your Honor. The reasoning is, and I agree with Your Honor, it's not retroactive. The reasoning is that the Mercado opinion is based on the premise that the court has decided that acquitted conduct sentencing does not violate the Sixth Amendment. I know that. I appreciate that. But what I'm trying to get at is if you're relying on action by the Sentencing Commission to be your intervening event, I guess we'll call it, right? That didn't become effective or hadn't become effective as of the date of this sentencing. So that event, that change from the Sentencing Commission wasn't operative yet. No, Your Honor, that's more relevant to this court considering whether or not it has a path under Miller v. Gammie, not what the district court should have applied. I don't know because this is a bit of a mind teaser to adopt the path. I don't think we've ever done this, have we? Your Honor, I could not find a case. I found cases where the Supreme Court has reasoned about other issues in an actual case that this court has then said was sufficient without having the holding overturned. I have not found a case that mirrors this. Judge Hurwitz and I have taken up a lot of your time on this. Have you found a case that says the Sentencing Commission's statements can be intervening authority? Not specific to the Sentencing Commission. There have been agency actions that have been considered intervening authority in other contexts. The government argues that she wasn't sentenced based on acquitted conduct but based on a hung jury. So how do you respond to that? Thank you, Your Honor. I think the record makes this clear for a couple of reasons, that Ms. Taylor was sentenced based on acquitted conduct, not based on the hung count. The first is the district court's sentencing language itself. Looking to the words of what he held in his sentencing ruling, which was the offense level is, quote, then increased by four points for the possession of a firearm in connection with drug distribution. Drug distribution is most parallel to count three, one of the acquitted counts, which was distribution of cocaine. The government argued that the court in its sentencing materials and the PSR did the same, the court could apply this enhancement based on possession of cocaine with intent to distribute the hung count or drug distribution. The court used the word drug distribution. That associates with count three. And the oral argument at sentencing only further supports that the court was making this consideration. The judge asked specifically the government if it could consider the evidence submitted at trial relating to the acquitted counts, specifically referencing count which was possession of a firearm and furtherance of drug trafficking and said my standards different. I consider preponderance of the evidence as opposed to beyond a reasonable doubt. So he specifically asked about that course. And then his ruling, he used the words drug distribution. You've used about half your time now on this, on trying to convince us that our prior decisions are wrong. And I'm sympathetic to it. But let's assume for a moment that we think we're stuck with our prior decisions and you can move to have us reconsider them in bank. I'd be interested in you addressing the obstruction of justice enhancement and tell me why you think that was improperly applied. Thank you, Your Honor. I want to start by talking about the obstruction of justice enhancement relating to this court's two most recent opinions on point, the Williams case and the whole Romero case, which were decided this year and addressed in our 28J letters. In order, what this court has said recently, reiterating prior reasoning and precedent, is that in order to find the obstruction of justice enhancement based on a defendant's trial testimony, that the sentencing court must explicitly find that the perjury was for the purpose of obstructing justice. That's the willfulness. That's the willfulness, Your Honor. So are you contending there's not sufficient evidence to establish willfulness or are you just contending that the judge never made the appropriate finding? Both, Your Honor. Well, let's, I'd like to direct you to the first one because whatever else, whatever other significance we give to the colloquy between counsel and the court about she knew she was under supervision, I think there's probably enough evidence for a judge to conclude by a preponderance of the that she knew she was lying. My question is a different one. Did the judge actually make the finding? And if he did, or she did, I forgot who the judge was. He did. Why was it, why was it sufficient? Why was it insufficient? Your Honor, the judge did not make the finding that it was for the purpose of obstructing justice here. And the whole Romero and Williams cases talk about the, I just very quickly, I want to mention whole Romero specifically talks about the harmless error standard in this context and is very relevant. But turning to the actual finding that was made, the court said, quote, I do find an increased level of two is appropriate for obstruction, primarily based on the expungement testimony. The prosecutor at the end of the sentencing rule, I think the government recognized, may judge, you haven't said, you haven't said willfulness. So do you, are you finding willfulness and materiality? And the judge said, yes, with respect to expungement, putting aside whether that is sufficient for finding willfulness. What this court has said is that in whole Romero and Williams is that in order to find willfulness, there must be an explicit finding explicit with specificity that the perjury was for the purpose of obstructing justice. Now, let me ask you what the judge then said thereafter and see whether or not, why do you think that wasn't enough? Because the judge essentially said after that, uh, essentially based on the fact that she gave this testimony right after the jury asked the question is, does that establish willfulness or does it only establish materiality? What he said right after the prosecutor asked was with respect to expungement. Yes. Um, they, they, but he said a little bit more, he said with respect to expungement. And then I, I have his exact words here, but we don't have to quote him. And she basically said, because it was given right after, right after the juror question. And so I'm asking you whether that's a finding of willfulness or materiality. It's my, my sense is it's a finding of materiality, but not necessarily of willfulness. I think that's right. Your honor, especially in light in this court's, um, requirement of explicit, an explicit finding that it was for the purpose of obstructing justice. But how does, how I'm sorry to interrupt you, but I will give you the quote because I happen to have it pulled up. Uh, the district judge then said, uh, the findings are based on, on the fact that her testimony did come fairly shortly after one of the juror questions ask about expungement. So I'm not sure how the timing of what she said, um, relates to whether it was material and whether it had the, uh, possibility of impacting the verdict, right? That's the materiality. And if she said it, um, you know, right after the question from the juror or a significant time later, still, that doesn't seem to reflect materiality. It seems to go to whether she did it with intention, whether she was, uh, whether she was massaging her testimony, changing her testimony in response to the question so that she could try to influence the verdict. Two quick responses, Your Honor. First, I think that this court has required specificity and Well, wait, wait, wait. So what you, you also have to keep in mind that our case law must be reconciled with Dunning, which is the Supreme Court's decision on this very issue. We can't overrule it. And so our, our case law has to be interpreted to be, uh, consistent with what the Supreme Court has said on this issue. And the court has said it's preferable for the district court to address each element of the alleged perjury in separate and clear findings. But it's sufficient, it says more, I quote, a determination that enhancement is required is sufficient, however, if the court makes a finding of an obstruction or an impediment to justice that encompasses all the factual predicates for a finding of perjury. So I don't read that to mean that there are magic words required, that the district judge has to say the words intent, purposeful, willful, material. Um, it just has to make the findings that encompass the elements of the perjury. A really quick factual clarification. And then I do want to save the remaining time for rebuttal. In this case, what happened after the jury question is that the prosecutor asked Miss Taylor about expungement explicitly. The prosecutor initiated this, she said. But she's, she's still testified. She did. And she said, it's true. You've never applied to have this expunged. Counsel, now you're talking about whether the judge could have made the finding, whether the record supported the finding. But I understood. So I'm now I'm a little confused about your argument because I don't hear anybody. Well, I'll just speak for myself. I, I, I, I, I take your point about the record. And I think I take Judge Hurwitz's point that the, the, the record would have supported, I think could have supported such a finding. But I understand your argument to be, and this is why you're causing me some confusion, that under Ho versus Romero, we have said, and quite recently in perjury cases, the express requirement for a finding of willful intent means the intent to obstruct justice. And we've reiterated, as I said, very, very recently, the earlier statement that has to be an explicit express finding. So in response, I'm not sure you're really grappling with Judge Beatty's question, which is asking you whether we're bound by this circuit precedent or by the United States Supreme Court precedent. And I'm sorry, Your Honor, I get, I'm getting distracted by that fact because it's been kind of incorrectly characterized. Let's get to it. Let's get to it. Yes, Your Honor, I think that we bound by the, I think the requirement for the explicit finding is absolutely required by this court's precedent. I don't think that's inconsistent with the Supreme Court. And I think it's because of the fundamental concern about chilling defense opportunity to testify on their own behalf. The fact that we need a clear record on this. And I know I'm over my time. Before you sit down, I think this is an easy yes or no question. But you say that a lot. I know. It turns out not to be. But I think your brief only challenges the absence of a finding on willfulness. Am I wrong about that? I think it, Your Honor, I will verify the answer to this before my rebuttal. Fair enough. Hang on, we've got one more question. I'm going to ask another question, Judge Kristen's very kind and generous. I'm sure she'll give you some time for rebuttal. Now I've lost my train of thought. Oh, if we were to agree with you and return the case for resentencing, which guidelines would apply? Your Honor, my understanding is that the current guidelines at the time of the resentency would apply. So guideline 826 would apply in this case. Oh, OK. When you come back, we'll put two minutes on the clock. We took a lot of your time. Good morning, Your Honors. May it please the Court. Sarah Barr, appearing on behalf of the United States. Can I interrupt you right at the top? I guess I just did. My understanding is that if we send this back for resentencing, it's a do-over with the guidelines that were in effect at the time. Is that wrong? I think that's wrong, Your Honor. I thought that too and looked it up yesterday, and I believe it will be the new guidelines in effect now. However. What's your authority for that? My authority is in an email that I sent somebody else and didn't jot down for myself. OK. But I would be happy to provide it to the Court in a supplemental brief. I might actually take you up on that. We get those offers all the time and we say, yeah, except I would like that authority. So go right ahead. I will be sure to do that. And I'll just sort of add, I don't think that the result would be any different because even if the Court relied on the acquitted distribution conduct, that conduct is almost entirely coextensive with the possession with intent to distribute conduct, which was not I'm a lot more concerned about the obstruction and perjury, and I'm not so sure that that wouldn't make a difference. I don't know. OK, great. But are you, do you have the same position vis-a-vis that? Because I think that added two points to the guideline calculation. I'm sorry, I'm not sure I'm understanding your question. My most concern, I'm just one of three, but the thing that I'm most concerned about on this sentencing is the perjury finding or the lack thereof. And so I don't take your argument or your statement to mean that you're saying that that wouldn't make a difference or requires resentencing. Correct. Correct. Yes, absolutely. I'm sorry. It would still be a two, if it were found, it would still be a two-point enhancement. Yes. The base might be different under the new guidelines. Well, I don't think that's right. The base would be the same because of the arson. Right. So that's what I'm trying to figure out, whether your answer to her, to judge. OK, now we're saying three different things. How about if you go on with your argument? And it sounds like we need to get a, but it's a very, it's a yes, no answer that we'll get to about whether, which set of guidelines would apply on remand. So if we remand, how's that? OK, go right ahead. OK, so regarding perjury, I think there's no dispute that the case law says that there must be an explicit finding. There is no case law that says what the form of that finding must be. Can I stop you there? Because you're, I know I just said I wouldn't do that, but you seem to be conceding the point there's a finding or requirement of an explicit finding. Are you relying on Ninth Circuit authority or could you go back to Judge Beatty's exchange with your friend? Sure. Ninth Circuit authority or Supreme Court authority? Supreme Court authority. I think the Ninth Circuit authority is consistent with the Supreme Court authority. I agree there's no magic words. There needs to be an explicit, an explicit finding. There need to be words, enough words. OK, thank you. And so in this case, was there a finding of, do we have all the findings that we need? In particular, we're concerned about willfulness, at least seems like that's where you're getting the questions. Yes, there was a finding in two ways. First, the court explicitly confirmed to the prosecutor, yes, I am finding willfulness pursuant to the expungement testimony specifically. Well, he didn't say that. He didn't say, yes, I am finding willfulness. He said, well, he said yes when the prosecutor asked, are you finding the expungement testimony to be willful and material? Did the judge ever utter the word willfulness? The judge himself did not utter it. What he did in addition to make, to state those explicit words on the record was clearly adopt the government sentencing memo, which contains extensive analysis, citations to the record, citations to this court's case law, citations to the USSG manual. There are timestamp references and quotations to the exact testimony that the government was pursuing. I don't think there's any question that the finding would have been supported here. That's just on my scorecard. Maybe Judge Hurwitz disagrees with me. My question is whether or not the finding was made. Go right ahead. I want to focus on what you had to say. One of the reasons we need a finding, whether it's in magic words or otherwise, is to review the basis for it. And at least in terms of the sentencing, the judge never made a finding of material, of willfulness until the government prompted him. Correct. Yes. And if he, if the government had never prompted him, we would have, I don't think so because we still have the adoption of the government sentencing memo, but it would be a different conversation. It'd be harder. Okay. So he now says yes to the government's question. And then he, and he says, and as to the expungement, Judge Beatty read you the words before, but essentially it was because it came right after the juror's question. Correct. I'm trying to figure out why that supports willfulness. Because remember the defense of Ms. Taylor was, yeah, I was wrong. I thought, I thought the expungement of an eviction or some thing really constituted expungement of the crime. You know, I might not believe her, but I'm out to find her a fact, but doesn't the judge at least have to address her defense and say why I don't believe it. He needs to find that it was willful. And I don't know. No, but is it, is it enough just to say willful when she's posed a very specific defense? I didn't do, this wasn't willful because I was honestly mistaken. If I were the trial judge based on this record, I would reject that in a minute, but I'm not the trial judge and the trial judge didn't reject that. What he said was it occurred in close proximity to the juror question. And I don't find that as having deal deal. I'd like a finding by the trial judge that she wasn't telling them that she, that she was willful. And I'm not sure I can find one. If I may answer that in two ways, number one, I would point you to, let's see the testimony on, or excuse me, not the testimony, the colloquy between the parties and the court about what to do about the jury note. And during that colloquy where the defendant was sitting right there, listening to the whole thing, the court suggested, well, I don't see expungement is relevant in this case. So I'm inclined to tell the jurors it's not relevant. And the government, I think it wasn't. And the government said, hold on a minute, hold on. There might be some relevance here because if her conviction was expunged, then she's not, she's not guilty on counts one and two, right? The defendant is hearing the government say that if the conviction is expunged, she's not guilty on counts one and two. Let's put aside whether that's correct, but go on. Right. But that's what was said and that's what the defendant heard. And then she went up and testified to clear falsities that her federal conviction, that all of her convictions were expunged. That was false. We all agree that was false. I think I'm trying, but why, why does the post proximity establish that she just wasn't mistaken? I think under a preponderance of the evidence standard, the court could make a rational inference that the proximity made it willful. It was also different. That's what I'm having trouble with. Why does the proximity make it willful? The proximity, I don't think it's material at all, but nobody seems to be fighting about that. But why does the proximity make it willful? I may be misspeaking when I say proximity. I think really what's more important is the sequence. It's really more the sequence, the fact that it came after and the judge used the term proximity. But I think in the context of the government sentencing memo, in the procedural history of the trial. Can we also look at, I'm sorry to interrupt you, but earlier in the colloquy, there was an exchange between the judge and I believe it was defense counsel and defense counsel was arguing. It wasn't a knowing misstatement because Oregon has been changing its laws with respect to expungement. And the district judge said, but wait a minute, I have this defendant on supervision for a prior felony. She's been under my supervision. She knows that this hasn't been expunged because she's still under supervision. So that seemed to be another really explicit part that happened during the sentencing colloquy where the district judge was making statements, findings of fact about willfulness. I agree with you, Your Honor. That shows what the court was thinking in its mind. And I think that's relevant. I think it's all- But the problem is that our problem is that our precedent requires an explicit finding. And we've said this for decades now over and over again. And we've also mused, I think on the record about whether that requirement is strictly necessary, but it is our precedent and you don't seem to be pushing back on that. My concern is that this exchange that we're having here today seems to be exactly why we've required these explicit findings because you've got, I think, persuasive, strong arguments about what the judge must have been thinking. And I'm not pushing back on whether the record would have required it, but there's an important First Amendment, the policy reason for the precedent in the first place that I want to reiterate and take your time with that. But isn't this the rub? Isn't this why we have this requirement? Absolutely. I absolutely agree with you, Your Honor. And I think that this case would be much harder for us if we didn't also have the court unequivocally say four different times that it was adopting the government sentencing memo and quote, all of the reasons contained in it as thorough and correct. Okay. So I think that's a strong argument for you. But if we go that route, it just seems to me that we disregard our own precedent that uses the word explicit. And then, of course, this Hogar versus Ramirez case, which is, you know, 2026, very recent case, reiterates that. So help me reconcile those two things, please. I don't think it's disregarding your precedent. Like I said, I think what the precedent is very concerned with is the substance of the findings that must be made. It must be findings of falsity, of materiality and willfulness. But do those work? I think that's the difference that probably Judge Christin and I have in approaching this is explicit findings, when I read Dunning, it says there must be a finding that encompasses all the factual predicates of perjury. But I don't read it to mean the word willful, the word material, the word falsity, that those actual words have to be uttered. The district judge has to say enough that we know that he or she has reached factual findings that support the elements of perjury. I agree with that. Do you agree that that can be squared with our precedent? I do. This court has plenty of precedent. What do you think explicit means? Maybe that's it. Maybe we think explicit is a different thing. I'm not trying to be flippant. I think you're right. I think you're right. Okay. I think explicit means words that allow this court to know whether it is making a finding related to the substance of these elements. And those words can be, I adopt the government sentencing memo for all the reasons contained in the sentencing memo. Could they be, I adopt the pre-sentence report? If the, well, it. They can't, can they? There's cases that say it's not enough to rely on the pre-sentence report. Well, I disagree with you on that. They don't say that it's, the pre-sentence report in that context is, it's insufficient to, as an example of explicitness, they say the substance of the pre-sentence report was insufficient there. So I think if the pre-sentence report in. So why isn't the substance of the government's sentencing memo also insufficient to establish? So the problem with the, with the PSRs in various cases has been it didn't cite the trial testimony or it didn't make findings on willfulness or materiality. There were no facts. It was, it was just insufficiently supporting one or more of the substantive elements. So, so we would argue in that case, or we would agree in that case, the court made an explicit finding, but the finding was insufficient because the PSR doesn't contain enough information required for the, for all three substantive findings. But that's not what we have here because we have the government sentencing memo that is 18 pages, extremely thorough and comprehensive, citing all of the facts, all of the record, all of the case law. Beyond that, beyond the memo, I'm, I would, and I worked in a trial court, so I, I assume this is happens here in trial courts as well, that something happens and the attorneys from one side or the other stand up and prompted the court to avoid reversible error, to avoid an error on the record. Your Honor, you forgot to, did you intend to allow the defendant to speak? Did you mean that finding when you're making a finding, you know, things like that, which seemed to me perfectly acceptable and reasonable so that we don't have needless appeals if something can be addressed on the spot. So I guess the, the implication of, Your Honor, are you making a finding of willfulness and materiality? Yes, in my view, would be the same as yes, I find it was material and willful if the judge had said those words. Is that consistent with what you think happened here and what happens in district court in Oregon? Yes. So let me, let me just play with that scenario a moment, see what your position is. Let's assume that we just get to the end, you know, the judge says, I, I, I'm going to apply the obstruction, the enhancement for obstruction, doesn't say why. The government, by the way, no criticism of the government here, did exactly what it was supposed to do. Said, judge, I think you forgot to address willfulness and materiality. And the judge says, yes, I find willfulness and materiality says nothing else. Would we sustain that? Simply because the record might well support his conclusion. Don't we need something, some basis for his conclusion to review? So what you need is enough of an explanation to satisfy you. We need some court of explanation. Considered the party's arguments and has a reason basis for exercising his, your view is that the, the adoption of the pre of the government sentencing memorandum provides the explanation. Absolutely. I think, I don't know that we would be here if what the court had done was just copied and pasted the government sentencing memo and put it in a written decision and issued it. Counsel, I'm going to stop you there and, but add a minute to your, just keep rolling. I'm going to give you another minute or two to, because we've taken so much of your time on one issue. Can you please address the Mercado issue? Or, I mean, unless you don't want to, I just wanted to give you an opportunity. Yes, no, I'm happy to address it. Does the court have a specific question? I'm concerned about the, the fact that our, our, our case law is what it is. Our precedent was what it was, I guess I should say. And the sentencing guidelines had been amended, but they hadn't been, the new effective date hadn't triggered those guidelines yet. And opposing counsel has got a theory about why the sentencing commission's action can be treated for Miller versus GAMI purposes as undermining. I'm not paraphrasing very well as undermining, so that that new rule should apply here. Sure, I don't, I think there, there may be a set of circumstances where that theory would be valid. I don't think it's this case, particularly because I do think it matters that the sentencing commission did not make it retroactive. And so as a matter of policy, it did not find it needed to correct these issues that it wanted to change going forward. But at the top of the hour, so to speak, you said that if we send this back, that the new set of guidelines apply? I think it does. But again, I don't think, and I will double check and send the case law that I found. What's tricky, of course, is the case law. Much of the case law talks about the guidelines that are in effect on the day the sentencing applied. But when you, when you send it back, of course, I think is, you know, I want that specific. And I thought that's what we object. But, you know, maybe we got it wrong. That's, that's something we'll need to follow up on. But be that as it may, I think Mercado remained our, although many people had lamented it. Do you agree that with Judge Hurwitz's question, when we walk down that path, that the United States Supreme Court doesn't have, never had a majority on that point? That's correct. Okay. Do you have more questions on that? Do you have questions? No. Okay. Thank you. Thank you. Thank you, Your Honor. To first very quickly answer Judge Hurwitz's question, I do think the way we raised the issue on obstruction is we did challenge all of, all of the required court's findings in our opening brief. So just to resolve that issue. I want to talk about why the court's blanket reference, positive reference, and agreement with the PSR and the ascendancy memo aren't sufficient to satisfy this court's precedent for explicit and specific findings in the obstruction of justice context. So this court addressed this issue in Williams. In that case, for the PSR. In that case, the court adopted the PSR pursuant to the, for the obstruction enhancement. And this court found that that wasn't sufficient to satisfy the court's unique concern with these explicit factual findings that need to be made. Well, what did the PSR say in that case? I mean, I think your friend on the other side is suggesting that the problem was that the PSR didn't, even if adopted, the document itself did not include sufficient findings. And Your Honor, the PSR here also did not include sufficient findings. But they're not relying on the PSR in this case. Or simply the PSR, the sentencing memo. They're also relying on the things the district judge said during the colloquy, including answering yes when asked if he was making a finding of willfulness. So, I mean, I don't think this line of it's not good enough to adopt the PSR really gets you over the finish line when there are other things at issue. Certainly, Your Honor. I think the issue that I was trying to address is whether or not it would be sufficient for the court to make a blanket reference about all the issues. He doesn't make it specific to the obstruction of justice finding. He says about all of the contested issues that I find that the PSR and the government's memo have done an accurate job of calculating the guidelines. So if instead of saying that, he had said, I find the three elements, falsity, materiality, and willfulness. And I adopt the reasons in the government's sentencing memorandum about why they were established. What would we have done in that circumstance? Your Honor, I think that's close to satisfying the requirements of this court. I think that... So why is what he did any different? I think what, and I want to say, I think that's close. I don't think that's quite there. Let's assume that I think it gets over the line. Why is this different? The reason that this is different is that the court didn't make the explicit finding of the purpose of obstructing justice anywhere in what he said. And the other reason that it's different is because he didn't say, I'm adopting these specific factual findings or these specific factual references as they apply to this holding. He said, I think they did a correct job, accurate and correct job in calculating the sentencing guidelines, crossing three different contested issues. And so that is not sufficient. It might be, Your Honor, sufficient for the court to make a finding on all of the elements and say, I'm adopting the factual findings as to each of these that the government made in their sentencing memo, but that's not the record we have here. And we also don't have that explicit reference in the sentencing holding or in the materials that were submitted to the court that this perjury was done for the purpose of obstructing justice. And so that's what's missing from this record. Your time is ticking back up. Oh, I'm at the ticking back up point. Thank you, Your Honor. Could you go ahead and wrap up, please? Your Honor, based on the arguments today, and also I would encourage the court to look at the factual record and why it's particularly complex relating to the issue of that reference to close proximity and why specificity really is required. We'd ask the court to reverse or remand for resentencing. Thank you both for your arguments. We appreciate that very much. And we'll take that case under advisement.
judges: CHRISTEN, HURWITZ, BADE